**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | **CASE NO. 15-53700 - WLH** |
| | : | |
| **BRENDA KAY ROBERTSON** | : | **CHAPTER 7** |
| **a/k/a BRENDA KAY ROBERTSON-SHORT,** | : | |
| | : | |
| _____ **Debtor.** | : | |
| | : | |
| **S. GREGORY HAYS,** | : | |
| **Chapter 7 Trustee for the estate of** | : | |
| **Brenda Kay Robertson,** | : | **ADVERSARY PROCEEDING** |
| | : | **NO. _____** |
| **Plaintiff.** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **IVY LOWREY, ASG PROPERTIES, INC.,** | : | |
| **MARISA ROBERTSON, BANG** | : | |
| **INVESTMENTS, LLC, BRAND** | : | |
| **PROPERTIES, LLC, AAA RESTORATION** | : | |
| **COMPANY, INC., and BRANCH GROUP,** | : | |
| **LLC,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**COMPLAINT**

S. Gregory Hays, Chapter 7 Trustee (the "Plaintiff") for the bankruptcy estate (the "Estate") of Brenda Kay Robertson a/k/a Brenda Kay Robertson-Short ("Brenda Robertson" or the "Debtor") files this complaint against the Debtor's daughter Ivy Lowrey ("Ivy"), Debtor's daughter-in-law Marisa Robertson ("Marisa"), and related entities, ASG Properties, Inc. ("ASG"), Bang Investments, LLC ("Bang"), Branch Group, LLC ("Branch"), Brand Properties, LLC ("Brand"), and AAA Restoration Company, Inc. ("AAA") (AAA, Brand, Branch, Bang, ASG, Marisa, and Ivy shall hereinafter collectively be referred to as the "Defendants") and shows the Court the following:

10571101v5

## I. **Jurisdiction and Venue**

1.      In this adversary proceeding, Trustee is seeking to avoid and recover certain pre-petition transfers of Debtor Brenda Roberston's interests in property.  Leading up to the instant case, Debtor and her daughter and son (and son's wife) engaged in a sophisticated and deliberate scheme to hinder, delay, and defraud Debtor's creditors.  Through this adversary proceeding, Trustee is attempting to make whole Debtor's creditors who have been harmed by this ongoing scheme to defraud.  Trustee is attempting to right the wrongs of Debtor and those who assisted her to perpetrate their fraud.

2.      This is an adversary proceeding commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 544, 548, 550, and 551 and other applicable laws.

3.      This adversary proceeding arises in and relates to the case of *In re Brenda Kay Robertson a/k/a Brenda Kay Robertson-Short*, Case No. 15-53700-WLH (the "Case"), pending in the Northern District of Georgia, Atlanta Division.

4.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),(E),(H), and (O).

5.      Plaintiff consents to the entry of final orders or judgment by the bankruptcy court.

6.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334 and 11 U.S.C. §§ 544, 550, and 551.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

8.      The Defendants are subject to the jurisdiction of this Court.

10571101v5

## II. **Defendant Identification and Procedural Background**

9. Defendants Ivy Lowrey is the daughter of Brenda Robertson. Marisa Robertson is the wife of Brandon Robertson, Debtor's son.

10. Debtor initiated this case by filing a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code on February 27, 2015 (the "Petition Date").

11. Trustee was appointed Chapter 7 trustee on or about the Petition Date, pursuant to 11 U.S.C. § 701.

12. Ivy Lowrey is subject to the jurisdiction and venue of this Court and may be served with process pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure at 2416 Turkey Mountain Road, Floyd, Rome, GA, 30161.

13. Marisa Robertson (who is the wife of Debtor's son Brandon Robertson) is subject to the jurisdiction and venue of this Court and may be served with process pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure at 3300 Running Springs Court, Franklin, Tennessee 37064.

14. ASG Properties, Inc. is an administratively dissolved Georgia corporation that is subject to the jurisdiction and venue of this Court and may be served with process pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure via its registered agent, Brian Daughdrill, 15 Lenox Pointe , Suite A, Atlanta, GA 30305.

15. Bang Investments, LLC is an administratively dissolved Georgia limited liability company that is subject to the jurisdiction and venue of this Court and may be served with process pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure via its registered agent, Frederick G. Boynton, 1867 Independence Square, Suite 105, Atlanta, GA, 30338.

16.     Branch Group, LLC is a Georgia limited liability company that is subject to the jurisdiction and venue of this Court and may be served with process pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure via its registered agent, Ivy Lowrey at 2416 Turkey Mountain Road, Floyd, Rome, GA, 30161.

17.     Brand Properties, LLC is a Tennessee limited liability company that is subject to the jurisdiction and venue of this Court and may be served with process pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure via its registered agent, Brandon Robertson, 2020 Fieldstone Parkway, #900-220, Franklin, TN  37069-4337.

18.     AAA Restoration Company, Inc. is an administratively dissolved Georgia corporation that is subject to the jurisdiction and venue of this Court and may be served with process pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure via its registered agent, Brian Daughdrill, 945 E. Paces Ferry Road, Suite 2750, Atlanta, GA, 30326, or via its current registered principal office in Tennessee, 2020 Fieldstone Parkway, #900-220, Franklin, TN  37069-4337.

### III. Debtor's Financial Affairs Prior to Fraudulent Transfers and Bankruptcy

19.     On February 3, 2006, Debtor guaranteed (the "Guaranty") a promissory note made by FirstCity Bank ("Original Lender") to HBC Communities, LLC ("HBC") in the original principal amount of $4,162,500.00 (the "HBC Loan" or "HBC Note").

20.     The HBC Loan was originated in February of 2006 in the original principal amount of $4,162,500 to fund the acquisition and development of 103 residential lots on a 37.62 acre site located in Phase II of Diamond Meadows, in Forest Park, Clayton County, Georgia. The original maturity date was February 5, 2007.

21.    In February 2007, Original Lender agreed to a Note Modification to extend the maturity date to August 1, 2007.

22.    On August 1, 2007, Original Lender agreed to another Note Modification to extend the maturity date to March 1, 2008.

23.    On March 1, 2008, Original Lender agreed to another Note Modification to extend the maturity date to March 1, 2009.

24.    The final maturity date of the HBC Note was March 1, 2009.

25.    On March 20, 2009, Original Lender was closed by the Georgia Department of Banking and Finance, and the Federal Deposit Insurance Corporation (the "FDIC") was named Receiver.  On February 9, 2010, FDIC, as receiver for Original Lender, assigned the HBC Loan and related loan documents and all rights thereunder to Multibank 2009-1 RES-ADV Venture, LLC ("Multibank") (the "Multibank Assignment").

26.    Thereafter, on February 17, 2011, Multibank assigned the HBC Loan and related loan documents and all rights thereunder to RES-GA Diamond Meadows, LLC ("RGDM").

27.    Original Lender was a creditor of Debtor from 2006 through 2009.

28.    FDIC became a successor to Original Lender on March 20, 2009, and remained a creditor of Debtor until FDIC assigned its rights to Multibank on February 9, 2010.  Further, to any extent that FDIC was legally unable to assign all of its rights to Multibank, FDIC retained any rights that it was unable to legally assign.

29.    If, at the time FDIC becomes a receiver, a failed bank has viable claims to avoid fraudulent transfers made by one of its debtors, FDIC can seek to avoid such fraudulent transfers within six years of FDIC's appointment as receiver for the failed bank.  *See* 12 U.S.C. § 1821(d)(14).  The six-year limitation periods begin to run on the date the claim accrues, which is

the later of the date the FDIC was appointed receiver and the date on which the cause of action accrued under state law. *See* 12 U.S.C. § 1821(d)(14)(B).

30.     Multibank, and its assignee RGDM, stood in the shoes of their assignor FDIC, including the FDIC's right to pursue fraudulent conveyance claims and the FDIC's statute of limitations to pursue such claims.  Accordingly, as of the Petition Date, RGDM was a creditor of Debtor which could have sued the Debtor, on or before March 20, 2015, to avoid any fraudulent conveyance that the Original Lender could have sought to avoid as of March 20, 2009 (the date the FDIC became receiver of the Original Lender).

31.     To any extent that FDIC was legally unable to assign all of its rights to Multibank, FDIC retained any rights that it was unable to legally assign.

32.     If FDIC could not legally transfer a fraudulent conveyance claim to Multibank, then, as of the Petition Date, FDIC could have sued Debtor, on or before March 20, 2015, to avoid any fraudulent conveyance that the Original Lender could have sought to avoid as of March 20, 2009 (the date the FDIC became receiver of the Original Lender).

### IV. The Fraudulent Transfers

33.     In July of 2004, Debtor purchased property located at 3448 South Bay Drive, Jonesboro, Henry County, Georgia (the "3448 South Bay Property"). The Warranty Deed naming debtor as grantee for the 3448 South Bay Property was dated July 16, 2004 and recorded December 9, 2004. The Warranty Deed recites that Debtor paid consideration in the amount of $1,274,500.00 to acquire the 3448 South Bay Property.

34.     Debtor executed a Deed to Secure Debt in favor of RBC Centura Bank for the 3448 South Bay Property on July 16, 2004 (recorded December 9, 2004).  The Deed to Secure Debt recites that Debtor owed RBC Centura Bank the amount of $1,274,500.00.

10571101v5

35.    On or about June 23, 2006, Debtor purchased a vacant lot ("Lot 2A") adjacent to the 3448 South Bay Property.

36.    By Quitclaim Deed dated July 20, 2004 and recorded on December 9, 2004, Debtor transferred the 3448 South Bay Property to one of her sons, Clay Robertson, for a recited consideration of $1,274,500.00, although Debtor testified under oath at her Rule 2004 examination that Clay Robertson did not pay her any consideration for such transfer.

37.    On September 29, 2008, Washington Mutual Bank recorded a Deed Under Power following a foreclosure and became the owner of the 3448 South Bay Property.

38.    On or about November 14, 2008, Debtor transferred funds via two cashier's checks in the amounts of $200,000 and $400,000 made payable to ASG Properties, Inc. ("ASG") (the "$600,000 Cash Transfer").

39.    At the time of the $600,000 Cash Transfer by Debtor, ASG was owned by individuals not related to the Debtor, Cory Graydon and Jerry "Jay" Pitts.  However, upon information and belief, ASG was used by Debtor and her family members for the purpose of buying and selling real property interests.

40.    At the time of the $600,000 Cash Transfer, HBC or Debtor's business, B Kay Builders, was in default on numerous loans (for which, upon information and belief, Debtor was indirectly obligated through personal guarantees or otherwise), and the HBC Note was due to mature about three months later.

41.    By Deed dated November 21, 2008 and recorded December 3, 2008, ASG acquired the 3448 South Bay Property from JPMorgan Chase Bank (which had acquired the 3448 South Bay Property from the FDIC, as Receiver for Washington Mutual Bank) for $660,000.00.

42.    ASG used the $600,000 Cash Transfer from Debtor to acquire the 3448 South Bay Property from JPMorgan Chase.

43.    Debtor claims that the $600,000 Cash Transfer to ASG was a loan, however, Debtor has produced no loan documents evidencing a loan to ASG.

44.    Upon information and belief, Debtor's making the $600,000.00 Cash Transfer to ASG did not create a loan owed by ASG to Debtor.

45.    By Quitclaim Deed dated April 8, 2009 and recorded April 14, 2009, the 3448 South Bay Property was transferred from ASG back to Debtor "for good consideration and for the sum of Five Hundred Fifty five thousand one hundred fifty one Dollars and 1 cent ($555,151.01)."

46.    However, Debtor testified under oath at her Rule 2004 Examination that no funds were paid by Debtor to ASG to acquire back the 3448 South Bay Property.  Debtor has acknowledged that, as a result of ASG's April 2009 transfer to her of the 3448 South Bay Property, any debt or loan which Debtor claimed was owed to her by ASG was satisfied.

47.    On or about April 29, 2009, Cory Graydon, ASG, Debtor, Brandon Robertson (Debtor's son), Marisa Robertson (Brandon's wife), MJ Homes, LLC, MJR Construction, Inc., and Eddie Robertson entered into a Settlement Agreement whereby Graydon was paid $120,000.00 (plus an additional $45,000.00 to be paid from the closing of a sale of property located at 972 Navaho Trail in Monroe) and Marisa Robertson became the owner of ASG (the "ASG Settlement Agreement"). Prior to the ASG Settlement Agreement, Marisa Robertson had no interest in ASG, and Marisa Robertson paid no consideration to acquire the interest she received through the ASG Settlement Agreement.

10571101v5

48.     The ASG Settlement Agreement released all claims between ASG and, inter alia, Debtor.  Accordingly, to the extent ASG owed any funds to Debtor as a result of any purported loan made by Debtor, Debtor's claim for such funds was released.

49.     Thereafter, the 3448 South Bay Property was transferred twice by deeds recorded June 24, 2009.

50.     First, by Quitclaim Deed dated June 1, 2009 and recorded June 24, 2009, Debtor transferred the 3448 South Bay Property to ASG for no consideration (the "2009 Property Transfer").  At the time of the 2009 Property Transfer, Marisa owned and controlled ASG.

51.     Debtor claims that as a result of her transfer of the 3348 South Bay Property to ASG for no consideration, the $600,000.00 "loan" to ASG was somehow reinstated, but Debtor has produced no loan documents to evidence such a reinstated loan.

52.     Upon information and belief, Debtor's making the 2009 Property Transfer did not create a loan owed by ASG to Debtor.

53.     Second, by Quitclaim Deed dated June 1, 2009 and recorded June 24, 2009, ASG transferred the 3448 South Bay Property to Bang Investments, LLC for no consideration.

54.     Bang Investments, LLC is an entity controlled by Debtor's son, Brandon Robertson ("Brandon"), and/or his wife, Marisa Robertson ("Marisa").  Brandon and Marisa caused Bang Investments, LLC ("Bang") to be formed with the couple's three minor children named as purported members of the LLC.

55.     Brandon and Marisa lived at the 3448 South Bay Property from 2009 through at least 2012.

56.     By Deed dated July 14, 2010 and recorded July 23, 2010, Debtor transferred Lot 2A to JAMMIC, Inc. for consideration sufficient to pay off the loan to RBC Centura Bank that

was secured by Lot 2A (the "Lot 2A Transfer").

57.     JAMMIC, Inc. is a corporation formed by Mike McCune, an individual Brandon has known since they were in the fifth grade together and who had been involved in Brandon's businesses.

58.     In July of 2010, a few days prior to the Lot 2A sale to JAMMIC, the sum of $250,000 was transferred to Branch Group, LLC ("Branch"), by an undisclosed remitter which Debtor alleges was in repayment of the $600,000 Cash Transfer to ASG (the "$250,000 Branch Transfer").

59.     The sole member and owner of Branch is Ivy Lowrey, who is Debtor's daughter.

60.     During July of 2010, a total of $537,568.35 was transferred to Branch and deposited into its Heritage First bank account (the "Branch Cash Transfer").

61.     Ivy testified that said funds were owed to her [not Branch], by her mother or BK Builders (her mother's company) but she could not remember, specifically.

62.     Ivy has not produced any documents to substantiate her claim that her mother or BK Builders (her mother's company) owed her any money.  Upon information and belief, Ivy cannot explain how or why Debtor or BK Builders owes her money.

63.     Upon information and belief, neither Debtor nor BK Builders owed any money to Ivy at the time of the Branch Cash Transfer.

64.     Instead, upon information and belief, the Branch Cash Transfer was a transfer of funds to which Debtor was entitled.

65.     The $537,568.35 deposited in the Branch Heritage First account in July, 2010 consisted of: (a) the proceeds of the $250,000 Branch Transfer; and (b) separate transfers of $91,703.43, $97,774.43 and $98,088.49 (the "MJ Transfers") which are listed on settlement

statements for sale of properties by MJR Construction, Inc. and MJ Homes, LLC (entities controlled by Debtor's family).

66.    Ivy testified that she had no knowledge why the settlement statements reflected funds owed to Branch Group.

67.    Upon information and belief, neither MJR Construction, Inc. nor MJ Homes, LLC owed money to Ivy or Branch.  Upon information and belief, Debtor caused MJR Construction, Inc. and MJ Homes, LLC to make the MJ Transfers to Branch.

68.    By Quitclaim Deed dated April 16, 2011, JAMMIC, Inc. transferred Lot 2A to Branch Group, LLC for no consideration.

69.    By deed dated April 16, 2012, Bang sold the 3448 South Bay Property to private purchasers for $930,000.00. The net proceeds due to Bang as Seller were $888,414.72. Following receipt of this wire transfer, Bang's account at Heritage Bank held funds totaling $1,268,792.66.

70.    On April 17, 2012, or a day after Bang transferred the 3448 South Bay Property, Bang issued a check for $1,250,000.00 to AAA.

71.    Debtor has produced no documentation for any loans involving Debtor, ASG, Bang Investments, and/or Marisa Robertson related to the 3448 South Bay Property.  Upon information and belief, no such documents exist.

72.    AAA is a corporation formed and controlled by Brandon and Marisa.

73.    Brandon testified at his Rule 2004 examination that AAA transferred approximately $1,250,000.00 to an entity formed and controlled by Brandon and Marisa, Brand Properties, LLC ("Brand"), for Brand to use to purchase, acquire title to, and renovate a house located at 3300 Running Springs Court, Franklin Tennessee (the "Franklin Tennessee Property")

where Brandon and Marisa now live with their children. There is no mortgage on the Franklin Tennessee Property.

74.    Accordingly, the end result of the transfers relating to the 3448 South Bay Property is that Brandon and Marisa (Debtor's son and daughter-in-law) now effectively own the Franklin Tennessee Property free and clear.

## V. Further Evidence of Scheme to Hinder, Delay, or Defraud

75.    Moreover, since Debtor made, or caused to be made, the $600,000.00 Cash Transfer, the 2009 Property Transfer, the Lot 2A Transfer, and the Branch Cash Transfer, the beneficiaries of these transfers have paid or caused to be paid various expenses of Debtor for no consideration and what appears to be in furtherance of Debtor's scheme to hinder and delay her creditors.

76.    For example, upon information and belief, just three weeks after the Petition Date, on or about March 17, 2015, Branch transferred $250,000.00 (the same amount as the $250,000.00 Branch Transfer) to A-1 Restoration, Inc. ("A-1").  Upon information and belief, A-1 is owned by Debtor's son, Brandon Robertson.

77.    In addition, upon information and belief, on or about February 12, 2015, A-1 paid at least $1,700.00 of Debtor's American Express ("Amex") bills, and from January 2014 to February 17, 2015, Brandon personally paid, or caused to be paid, over $40,000.00 for Debtor's Amex bills.

78.    Moreover, upon information and belief, on March 7, 2015, just two weeks after the Petition Date, Ivy opened an Amex account for Debtor that Ivy paid from her personal funds and possibly funds of Branch.

79.    What is more, upon information and belief, in February 2014, Branch, for no

consideration, transferred $70,000.00 to Madison Communities, LLC, which is a business owned

by Debtor's husband and which pays Debtor's expenses.

80.     Finally, upon information and belief, Ivy has paid various other expenses of

Debtor within the last three years.

### VI. <u>Reservation of Rights</u>

81.     During the course of this adversary proceeding, Trustee may learn (through

discovery or otherwise) of additional transfers made to Defendants during any applicable period

under the Bankruptcy Code or other applicable law. It is Trustee's intention to avoid and recover,

under federal and state law, all transfers of any interest of Debtor in property made to or for the

benefit of Defendants or any other transferee, including but not limited to preferential,

fraudulent, and unauthorized post-petition transfers.  Trustee reserves the right to amend this

Complaint to include: (i) further information regarding the subject transfers, (ii) additional

transfers, (iii) modifications of and/or revision to Defendants' names, and/or (iv) additional

defendants that may become known to Trustee at any time during this Adversary Proceeding,

through formal discovery or otherwise, and for all such amendments to relate back to the date of

filing of this original Complaint.

### COUNT I
### (Claim to Avoid the $600,000 Cash Transfer
### under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or Other Applicable Law, and 11 U.S.C. § 544)

82.     Plaintiff realleges the allegations of paragraphs 1 through 81 above as though

fully set forth herein.

83.     At the time of the $600,000 Cash Transfer, Debtor had creditors, including

Original Lender, that had not and still have not been paid in full for their debts.

84.     The $600,000 Cash Transfer occurred when Debtor was suffering serious

financial issues.

85.    At the time of the $600,000 Cash Transfer, the sum of Debtor's debts was greater than the sum of her assets.

86.    Debtor received less than reasonably equivalent value for or on account of the $600,000 Cash Transfer.

87.    Debtor made the $600,000 Cash Transfer with the actual intent to hinder, delay, or defraud her creditors.

88.    Plaintiff is entitled to avoid the $600,000 Cash Transfer under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544(b).

## COUNT II
### (Claim to Avoid the $600,000 Cash Transfer under O.C.G.A. § 18-2-75, 28 U.S.C. § 3304, or Other Applicable Law, and 11 U.S.C. § 544; Alternative Count)

89.    Plaintiff realleges the allegations of paragraphs 1 through 88 above as though fully set forth herein.

90.    Plaintiff is entitled to avoid the $600,000 Cash Transfer under O.C.G.A. § 18-2-75, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544(b).

## COUNT III
### (Preservation of Avoided $600,000 Cash Transfer under 11 U.S.C. § 551)

91.    Plaintiff realleges the allegations of paragraphs 1 through 90 above as though fully set forth herein.

92.    The avoided $600,000 Cash Transfer is preserved for the benefit of the Estate under 11 U.S.C. § 551.

## COUNT IV
### (Claim for Recovery under 11 U.S.C. § 550)

93.    Plaintiff realleges the allegations of paragraphs 1 through 92 above as though

fully set forth herein.

94.    ASG and/or Marisa is the initial transferee of the $600,000 Cash Transfer or the entity for whose benefit the $600,000 Cash Transfer was made, in that

    a.    ASG used the proceeds of the $600,000 Cash Transfer to acquire the 3448 South Bay Property in late 2008 until ASG conveyed the property to Debtor in April of 2009 for recited consideration of $555,151.01, but without real consideration;

    b.    Debtor re-conveyed the 3448 South Bay Property to ASG on June 1, 2009 for no consideration;

    c.    ASG immediately (on June 1, 2009) conveyed the 3448 South Bay Property to Bang (an entity controlled by Brandon and Marisa) for no consideration;

    d.    Marisa resided at the 3448 South Bay Property from 2009 through at least 2012;

    e.    Bang sold the 3448 South Bay Property to third-party purchasers for $930,000.00 on April 16, 2012, with net proceeds of $888,414.72;

    f.    Bang used those funds (and more) to issue a check in the amount of $1,250,000.00 to AAA, a corporation formed and controlled by Brandon and Marisa;

    g.    AAA then transferred $1,250,000 to Brand for Brand to use to acquire the Franklin Tennessee property, free and clear, for Brandon and Marisa and their children to live in.

95.    Alternatively, Marisa, ASG, Bang, AAA, and Brand are the mediate or immediate transferees of the $600,000 Cash Transfer.

96.    To the extent that the $600,000 Cash Transfer is avoided by the Court, Plaintiff is entitled to recover from Marisa, ASG, Bang, AAA, or Brand the funds transferred through the

$600,000 Cash Transfer, or its value, under 11 U.S.C. § 550.

## COUNT V
### (Claim to Avoid the 2009 Property Transfer
### under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or Other Applicable Law, and 11 U.S.C. § 544)

97.     Plaintiff realleges the allegations of paragraphs 1 through 96 above as though fully set forth herein.

98.     At the time of the 2009 Property Transfer, Debtor had creditors, including Original Lender, that had not and still have not been paid in full for their debts.

99.     The 2009 Property Transfer occurred when Debtor was suffering serious financial issues.

100.     At the time of the 2009 Property Transfer, the sum of Debtor's debts was greater than the sum of her assets.

101.     Debtor received less than reasonably equivalent value for or on account of the 2009 Property Transfer.

102.     Debtor made the 2009 Property Transfer with the actual intent to hinder, delay, or defraud her creditors.

103.     Plaintiff is entitled to avoid the 2009 Property Transfer under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544(b).

## COUNT VI
### (Claim to Avoid the 2009 Property Transfer under O.C.G.A. § 18-2-75, 28 U.S.C. § 3304, or Other Applicable Law, and 11 U.S.C. § 544; Alternative Count)

104.     Plaintiff realleges the allegations of paragraphs 1 through 103 above as though fully set forth herein.

105.     Plaintiff is entitled to avoid the 2009 Property Transfer under O.C.G.A. § 18-2-75, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544(b).

## COUNT VII
### (Preservation of Avoided 2009 Property Transfer under 11 U.S.C. § 551)

106.    Plaintiff realleges the allegations of paragraphs 1 through 105 above as though fully set forth herein.

107.    The avoided 2009 Property Transfer is preserved for the benefit of the Estate under 11 U.S.C. § 551.

## COUNT VIII
### (Claim for Recovery under 11 U.S.C. § 550)

108.    Plaintiff realleges the allegations of paragraphs 1 through 107 above as though fully set forth herein.

109.    ASG and/or Marisa is the initial transferee of the 2009 Property Transfer or the entity for whose benefit the 2009 Property Transfer was made, in that

    a.    ASG immediately (on June 1, 2009) conveyed the 3448 South Bay Property to Bang (an entity controlled by Brandon and Marisa) for no consideration;

    b.    Marisa resided at the 3448 South Bay Property from 2009 through at least 2012;

    c.    Bang sold the 3448 South Bay Property to third-party purchasers for $930,000.00 on April 16, 2012, with net proceeds of $888,414.72;

    d.    Bang used those funds (and more) to issue a check in the amount of $1,250,000.00 to AAA, a corporation formed and controlled by Brandon and Marisa;

    e.    AAA then transferred $1,250,000 to Brand for Brand to use to acquire the Franklin Tennessee property, free and clear, for Brandon and Marisa and their children to live in.

110.    Alternatively, Marisa, ASG, Bang, AAA, and Brand are the mediate or immediate

transferees of the 2009 Property Transfer.

111.    To the extent that the 2009 Property Transfer is avoided by the Court, Plaintiff is entitled to recover from Marisa, ASG, Bang, AAA, or Brand the property interest transferred through the 2009 Property Transfer, or its value, under 11 U.S.C. § 550.

## COUNT IX
### (Claim to Avoid the Branch Cash Transfer
### under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or Other Applicable Law, and 11 U.S.C. § 544)

112.    Plaintiff realleges the allegations of paragraphs 1 through 111 above as though fully set forth herein.

113.    At the time of the Branch Cash Transfer, Debtor had creditors, including Multibank or the FDIC, that had not and still have not been paid in full for their debts.

114.    The Branch Cash Transfer occurred when Debtor was suffering serious financial issues.

115.    At the time of the Branch Cash Transfer, the sum of Debtor's debts was greater than the sum of her assets.

116.    Debtor received less than reasonably equivalent value for or on account of the Branch Cash Transfer.

117.    Debtor made the Branch Cash Transfer, or caused it to be made, with the actual intent to hinder, delay, or defraud her creditors.

118.    Plaintiff is entitled to avoid the Branch Cash Transfer under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544(b).

## COUNT X
### (Claim to Avoid the Branch Cash Transfer under O.C.G.A. § 18-2-75, 28 U.S.C. § 3304, or
### Other Applicable Law,, and 11 U.S.C. § 544; Alternative Count)

119.    Plaintiff realleges the allegations of paragraphs 1 through 118 above as though

fully set forth herein.

120.    Plaintiff is entitled to avoid the Branch Cash Transfer under O.C.G.A. § 18-2-75,

28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544(b).

## COUNT XI
### (Preservation of Avoided Branch Cash Transfer under 11 U.S.C. § 551)

121.    Plaintiff realleges the allegations of paragraphs 1 through 120 above as though

fully set forth herein.

122.    The avoided Branch Cash Transfer is preserved for the benefit of the Estate under

11 U.S.C. § 551.

## COUNT XII
### (Claim for Recovery under 11 U.S.C. § 550)

123.    Plaintiff realleges the allegations of paragraphs 1 through 122 above as though

fully set forth herein.

124.    Ivy or Branch is the initial transferee of the Branch Cash Transfer or the entity for

whose benefit the Branch Cash Transfer was made.

125.    Alternatively, Ivy or Branch is the mediate or immediate transferee of the Branch

Cash Transfer.

126.    To the extent that the Branch Cash Transfer is avoided by the Court, Plaintiff is

entitled to recover from Ivy or Branch the funds transferred through the Branch Cash Transfer, or

its value, under 11 U.S.C. § 550.

## COUNT XIII
### (Claim to Avoid the Lot 2A Transfer
### under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or Other Applicable Law, and 11 U.S.C. § 544)

127.    Plaintiff realleges the allegations of paragraphs 1 through 126 above as though

fully set forth herein.

128.    At the time of the Lot 2A Transfer, Debtor had creditors, including Multibank or RGDM or the FDIC, that had not and still have not been paid in full for their debts.

129.    The Lot 2A Transfer occurred when Debtor was suffering serious financial issues.

130.    At the time of the Lot 2A Transfer, the sum of Debtor's debts was greater than the sum of her assets.

131.    Debtor received less than reasonably equivalent value for or on account of the Lot 2A Transfer.

132.    Debtor made the Lot 2A Transfer with the actual intent to hinder, delay, or defraud her creditors.

133.    Plaintiff is entitled to avoid the Lot 2A Transfer under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544(b).

## COUNT XIV
**(Claim to Avoid the Lot 2A Transfer under O.C.G.A. § 18-2-75, 28 U.S.C. § 3304, or Other Applicable Law, and 11 U.S.C. § 544; Alternative Count)**

134.    Plaintiff realleges the allegations of paragraphs 1 through 133 above as though fully set forth herein.

135.    Plaintiff is entitled to avoid the Lot 2A Transfer under O.C.G.A. § 18-2-75, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544(b).

## COUNT XV
**(Preservation of Avoided Lot 2A Transfer under 11 U.S.C. § 551)**

136.    Plaintiff realleges the allegations of paragraphs 1 through 135 above as though fully set forth herein.

137.    The avoided Lot 2A Transfer is preserved for the benefit of the Estate under 11 U.S.C. § 551.

10571101v5

## COUNT XVI
### (Claim for Recovery under 11 U.S.C. § 550)

138.    Plaintiff realleges the allegations of paragraphs 1 through 137 above as though fully set forth herein.

139.    Ivy or Branch is the initial transferee of the Lot 2A Transfer or the entity for whose benefit the Lot 2A Transfer was made.

140.    Alternatively, Ivy or Branch is the mediate or immediate transferee of the Lot 2A Transfer.

141.    To the extent that the Lot 2A Transfer is avoided by the Court, Plaintiff is entitled to recover from Ivy or Branch the property interest transferred through the Lot 2A Transfer, or its value, under 11 U.S.C. § 550.

**WHEREFORE,** Plaintiff prays that this Court enter a judgment:

(a) Avoiding the $600,000 Cash Transfer under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544;

(b) Alternatively, avoiding the $600,000 Cash Transfer under O.C.G.A. § 18-2-75, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544;

(c) Preserving for the benefit of Debtor's Estate the avoided $600,000 Cash Transfer under 11 U.S.C. § 551;

(d) Ordering Marisa, ASG, Bang, AAA, or Brand to turnover, deliver, and transfer their interest in the funds transferred through the $600,000 Cash Transfer, or its value, under 11 U.S.C. § 550;

10571101v5

(e) Avoiding the 2009 Property Transfer under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544;

(f) Alternatively, avoiding the 2009 Property Transfer under O.C.G.A. § 18-2-75, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544;

(g) Preserving for the benefit of Debtor's Estate the avoided 2009 Property Transfer under 11 U.S.C. § 551;

(h) Ordering Marisa, ASG, Bang, AAA, or Brand to turnover, deliver, and transfer their interest in the property interest transferred through the 2009 Property Transfer, or its value, under 11 U.S.C. § 550;

(i) Avoiding the Branch Cash Transfer under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544;

(j) Alternatively, avoiding the Branch Cash Transfer under O.C.G.A. § 18-2-75, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544;

(k) Preserving for the benefit of Debtor's Estate the avoided Branch Cash Transfer under 11 U.S.C. § 551;

(l) Ordering Ivy or Branch to turnover, deliver, and transfer their interest in the funds transferred through the Branch Cash Transfer, or its value, under 11 U.S.C. § 550;

(m) Avoiding the Lot 2A Transfer under O.C.G.A. § 18-2-74, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544;

10571101v5

(n) Alternatively, avoiding the Lot 2A Transfer under O.C.G.A. § 18-2-75, 28 U.S.C. § 3304, or other applicable law, and 11 U.S.C. § 544;

(o) Preserving for the benefit of Debtor's Estate the avoided Lot 2A Transfers under 11 U.S.C. § 551;

(p) Ordering Ivy or Branch to turnover, deliver, and transfer their interest in the funds transferred through the Lot 2A Transfer, or its value, under 11 U.S.C. § 550; and

(q) Granting to Plaintiff such other and further relief deemed just and proper.

Respectfully submitted this 27th day of February, 2017.

ARNALL GOLDEN GREGORY LLP
*Attorneys for Trustee*

By: */s/ Michael J. Bargar*
     Michael J. Bargar
     Georgia Bar No. 645709
     michael.bargar@agg.com

171 17th Street, NW, Suite 2100
Atlanta, GA 30363
(404) 873-8500

10571101v5